**CANEY CREEK COAL COMPANY,**
Appellant,

**v.**

**T. H. ELLIS and M. J. Brown, dba Ellis & Brown Coal Company, Appellees.**

Court of Appeals of Kentucky.

Jan. 24, 1969.

William P. Donan, Donan & Vick, Greenville, for appellant.

William G. Fuqua, Russellville, for appellees.

DAVIS, Commissioner.

The appellees, Ellis and Brown, as plaintiffs, obtained a verdict and judgment of $45,000 against the appellant, Caney Creek Coal Company, as damages for claimed loss of equipment and material and loss of profits said to have occurred when the appellant company strip mined the No. 11 and No. 12 veins of coal overlying the No. 9 vein of coal upon which appellees held a mining lease. Caney Creek asserts that (1) it was not negligent and was entitled to a peremptory instruction; (2) evidence concerning damages was speculative and inadmissible; (3) loss of profits was not shown with reasonable certainty; and (4) the verdict is excessive, and appellees' counsel was guilty of misconduct in his argument to the jury.

In 1957 Blue Diamond Mining Company granted appellees a mining lease under which appellees obtained the right to exploit the No. 9 seam of coal underlying about 120 acres known as the Rhodes Hill tract, by deep-mine methods. In that lease appellees were granted an option to strip mine seams No. 11 and 12 overlying the No. 9 seam. Appellees did not exercise that option, and Blue Diamond granted Caney Creek the right to strip mine the No. 11 and No. 12 seams.

Evidence presented by appellees tended to show that the activities of the appellant company in strip mining the two overlying seams of coal caused such damage to two underground mining operations of appellees as to render them worthless. Appellees' older mining operation was designated as Mine No. 1 and had been operated from 1957 until 1964. The other project was designated as E & B Mine. Development of the E & B Mine had not progressed much beyond the erection of a tipple and driving an opening some 95 or 100 feet into the coal seam. Appellees explained that it was their usual practice to suspend mining operations from about April 1 until September 1 of each year. In accord with that practice, the No. 1 mine was closed in the spring of 1964, at which time it was in good condition and sufficiently free of water to enable mining to be carried on in it. The E & B Mine was also relatively free of water and showed no outward sign suggesting any difficulty in processing the coal from it. In July or August 1964, appellant began construction of a haul-way road (frequently called a "uke" road in apparent reference to the heavy Euclid equipment used on such roads). In order to make the road, appellant used a 42-yard dragline and shot many blasts of explosives. Evidence for appellees tended to show that a high wall near appellees' mines

was heavily shot by explosives and that the roof in each of the underground mines was shattered and made unsafe as a result of the explosives. Other evidence for appellees indicated that activity by the appellant caused excessive amounts of water to enter both mines so that it was substantially impossible to carry on mining operations in either of them due to the water and the unsafe condition of the roof. Both mines were operable before appellant's activities; neither was so afterward, according to appellees' evidence.

Appellant contends that there was no showing that any of its conduct in stripping the two seams of coal was negligently performed. Our review of the record convinces us that the circumstances which were disclosed by the evidence abundantly warranted the trial court's ruling in submitting to the jury whether appellant's actions were reasonable and proper in the particular circumstances described in the evidence.

Witnesses from each side testified that stripping operations of seams above underground seams could be and had been performed without damage or injury to the underlying seam. We think it is apparent that appellant owed appellees the duty to take reasonable precautions to avoid injury to appellees' property rights. The jury had sufficient evidence to support a finding that the appellant improperly caused excessive waters to flow into appellees' works. There was other evidence for appellees supporting the proposition that the magnitude of the blasts was such as to shake the superstructures in the underground mining passages so as to render unsafe the mining roof in each mine. It is true that countervailing evidence was presented by the appellant, but the resulting issue was properly presented to the jury for resolution. It follows that the court properly overruled appellant's motion for a peremptory instruction.

Appellant cites Corbin's Ex'rs v. Corbin, 302 Ky. 208, 194 S.W.2d 65, which notes that courts are not inclined to accord as much weight to evidence given by interested witnesses as is ordinarily given to the testimony of disinterested witnesses. It is reasoned by appellant that the rationale of Corbin applies to the evidence given by Ellis and Brown. We agree, but point out that the rule under discussion by no means destroys the probative value of the evidence given by interested witnesses. Kentucky Glycerine Company v. Woodruff Development Company, 233 Ky. 325, 25 S.W. 2d 736, relied on by appellant, is not dispositive in the present case. As was noted in Kentucky Glycerine, negligence is never presumed but must be established by positive proof or proof of facts or circumstances from which it can be reasonably inferred. It is our view that the facts and circumstances presented here were sufficient to support a reasonable inference that the damages about which appellees complain resulted from negligence on the part of the appellant. Neither do we regard the situation at bar comparable to that which obtained in Elkhorn Coal Corp. v. Johnson, Ky., 263 S.W.2d 124. In that case liability required proof that the mining operations were conducted in an arbitrary, wanton, or malicious manner. No such requirement is present here. It has been held that negligence is not a prerequisite for recovery of damages from blasting anyway. Valley Stone Company v. Binion, Ky., 422 S.W.2d 889.

Neither do we regard the evidence as to damages fatally speculative or inadmissible. Appellees presented evidence through competent expert witnesses sufficient to sustain a finding by the jury that approximately 7,840 tons of coal per acre existed in the No. 9 seam so that approximately 45,604 tons of coal in place remained in the No. 1 mine of which 60 to 65% was recoverable. The evidence reflected that in the new E & B Mine about 318,304 tons of coal in place existed, of which at least 60% could be mined by the

underground method. Appellant calls attention to 32 C.J.S. Evidence § 567, pages 580–581; Moutain Petroleum Company v. Howard, Ky., 351 S.W.2d 178; and Springfield Fire & Marine Insurance Company v. Ramey, 245 Ky. 367, 53 S.W.2d 560, for the general proposition that mere opinions or conclusions of an unskilled witness, without adequate supporting facts, possess little or no probative value. We subscribe to that rule but find it inapplicable here because the conclusions and opinions were furnished by expert witnesses, not unskilled witnesses, and were based on facts and factors generally accepted in the coal mining industry as reliable in making such estimates. As regards the evidence concerning some of the mining equipment, we think the proof was sufficient to submit to the jury the resolution of what, if any, monetary loss appellees sustained. In any event, the jury's verdict was a general one returned under an instruction to which appellant offered no objection. We are unable to ascertain whether any of the verdict is ascribable to loss of equipment or whether it is all for loss of profits to be reasonably anticipated from the mining of coal.

■ Appellant correctly points out that loss of profits to be recoverable must be shown with reasonable certainty. This principle has been recognized in McPherson v. Dukes, 314 Ky. 70, 234 S.W.2d 307, and in other authorities cited by appellant. On the other hand, as was noted in Time Finance Company v. Beckman, Ky., 295 S.W.2d 346, and in other authorities cited by appellees, loss of profits may be recovered where the amount of profits lost by the injury can be shown with reasonable certainty. Cf. Gregory v. Slaughter, 124 Ky. 345, 99 S.W. 247. In the case at bar, the appellees presented income tax records and other evidence sufficient to reflect with reasonable certainty the anticipation of profits from future mining operations of the No. 9 seam of coal. In our judgment the proof in this regard was sufficient.

■ Appellant contends that the verdict of the jury was excessive and appears to have been rendered under the influence of passion and prejudice. The jury had a right to believe the evidence offered by appellees, and that evidence would have supported a verdict even higher than the one which was rendered. The amount of the verdict appears liberal, but we are unable to say that it appears excessive at first blush.

■ Appellant complains of an alleged improper argument by appellees' counsel. Evidence was presented showing that appellant had agreed to furnish appellees 10,000 tons of No. 9 coal in return for which appellees were to make certain payments and shut down their mining operations until appellant had finished its stripping operations. One provision of that agreement was that appellees would "save harmless" appellant from any claim of the United Mine Workers of America union for a per-ton payment to the union's Welfare Fund. The agreement was never consummated. Appellant maintained that it was not consummated because appellees were not members of the union so that the union would not permit appellant to deliver the coal to appellees. Appellees disputed this. In his closing argument the attorney for appellees spoke of that agreement and said: "They are trying to use that to get out of this contract." An objection by appellant was overruled. We do not regard the argument as an improper one in the circumstances of this case, but even if it were, we are not persuaded that its impact was so severe as to warrant reversal. If it was error, it was harmless error. CR 61.-01.

The judgment is affirmed.

All concur.