**REAL ESTATE MARKETING, INC. and Robert T. Mayes, f/d/b/a First Lexington Company, Movants,**

v.

**Michael J. FRANZ and Kim Franz, Respondents.**

No. 93–SC–124–DG.

Supreme Court of Kentucky.

Oct. 27, 1994.

As Corrected Oct. 27, 1994.

Richard A. Getty, Maryellen B. Mynear, Frost & Jacobs, Lexington, for movants.

Phillip M. Moloney, Mary Gumbert Moloney, Lexington, for respondents.

Glenn E. Acree, Julia Field Costich, Lexington, for amicus, Homebuilders Assoc. of Ky.

LEIBSON, Justice.

The issue is whether homeowners, when they are *not* the original purchasers, can assert a viable claim against the homebuilder for structural defects. *Crawley v. Terhune,*

Ky., 437 S.W.2d 743 (1969) adopted as a common law principle an implied warranty of habitability to the

> "buyer of a new house from the professional builder-seller ... to the extent of holding that in the sale of a new dwelling by the builder there is an implied warranty that in its major structural features the dwelling was constructed in a workmanlike manner and using suitable materials." *Id.* at 745.

The question is whether it is appropriate to extend this principle to present circumstances involving a subsequent purchaser from the original homeowner.

Real Estate Marketing, Inc. and Robert T. Mayes, f/d/b/a First Lexington Company ("First Lexington") built and sold the house in question to Michael and Diane Carey ("the Careys") on September 1, 1985. The Careys sold to the respondents, Michael and Kim Franz ("the Franzes") on November 13, 1989. As stated in First Lexington's brief, the Court of Appeals has held that "a person who buys a house from its original owner may sue the builder of the house for breach of an implied warranty of habitability, even though there is no privity of contract between the subsequent owner and the builder."

The Careys complained to the builder of problems with the house, including uneven flooring and moisture around the front foyer, and First Lexington did some repair work after arbitration proceedings as provided for by an insurance policy issued on behalf of First Lexington by the Homeowner's Warranty Corporation ("HOW") and the HOW Insurance Corporation ("HOWIC"). There were additional problems, including what the movants describe as a slight separation of the chimney from the house, which the Careys attempted to deal with on their own, after their second homeowner's warranty claim was denied. Ultimately, the Careys solved their problems by selling the house to the Franzes. According to the Franzes, soon after the sale, the Franzes began experiencing problems of their own, including water leaking into the front hallway, warping of the parquet and linoleum flooring, and mold and mildew. The Franzes attribute their problems to latent structural defects caused by improper construction and poor workmanship of the builder, First Lexington, in violation of the building code in force by application of statute and local ordinance. The builder responds that it was issued a Certificate of Occupancy by the Lexington–Fayette Urban County Government, Division of Building Inspection, on September 4, 1985, certifying "permission to occupy the house," presumably upon a finding that construction complied with the applicable building code.

The Franzes sued both the Careys (alleging fraud and deceit) and the builder, First Lexington. The theories of liability alleged against First Lexington included: (1) negligence and negligence *per se* in failing to comply with various provisions of the uniform state building code; (2) breach of implied warranties of merchantability, fitness for particular purpose, and habitability; and (3) a statutory cause of action because "First Lexington failed to comply with the provisions of KRS 198B, as well as the Uniform State Building Code, thereby giving rise to a private action by plaintiffs against defendant, First Lexington, for damages against it in accordance with KRS 198B.130."

KRS Chapter 198B is styled "Housing, Buildings and Construction—Building Code." It provides for adopting a building code and further provides for a system of public inspection intended to achieve compliance with the building code, a process which includes obtaining a certificate of occupancy. Then it supplements whatever benefit is to be derived through the building code and public inspection system with KRS 198B.130, which provides as follows:

> "Notwithstanding any other remedies available, any person or party, in an individual capacity or on behalf of a class of persons or parties, damaged as a result of a violation of this Chapter or the uniform state building code, has a cause of action in any court of competent jurisdiction against the person or party who committed the violation. An award may include damages and the cost of litigation, including reasonable attorney's fees."

The complaint included further allegations charging both the Careys and First Lexington with liability based on violation of the

Consumer Protection Act, KRS 367.110, et seq., and alleging a statutory cause of action against First Lexington based on KRS 446.070 which specifies:

> "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

The claim asserted under the Consumer Protection Act was denied by the trial court on grounds that "goods are defined in KRS 355.2–105(1), and a home does not fall within that definition," and this ruling was not challenged on appeal. The claim asserted under KRS 446.070 properly qualifies as part of the negligence *per se* claim as we will discuss later in this opinion.

In an Opinion and Order rendered November 20, 1991, the trial court sustained First Lexington's "motion to dismiss for failure to state a claim upon which relief can be granted," specifying its decision was "predicated upon the obvious determination by this Court that there is a not a dispute of fact" concerning any matter the trial court considered "essential" to its decision: "therefore, this is not in the form of a summary judgment." By Order of January 9, 1992, the trial court specified that the dismissal against First Lexington was "a final and appealable Judgment." Thus the trial court severed the case against First Lexington from the case against the Careys for purposes of appeal. Subsequent developments in the case against the Careys have no bearing on this appeal.

 The trial court was of the opinion that the five-year statute of limitations in KRS 413.120 applied to this case and barred the Franzes cause of action against First Lexington. In its opinion, the running of limitations was triggered by a letter from the Careys to First Lexington on March 2, 1986 providing a list of alleged defects in the house. The trial court reasoned that knowledge of defects possessed by the Careys should be imputed to the Franzes as successor in title, that the cause of action accrued when the Careys knew of the defects, and that "failure of the Careys to advise the Franzes of these defects, ... [was] not the responsibility of the Defendant, First Lexington Company."

The Court of Appeals reversed on this issue, opining that there are factual issues upon which the application of the statute depends, most significantly First Lexington's alleged failure to make adequate repairs when responding to the Careys' warranty claim under the Homeowners Warranty Insurance Policy. But the basic premise underlying the Franzes' claim regarding the statute of limitations is broader than whether the running of limitations was temporarily tolled by the attempted repairs. The Franzes assert the discovery rule: the time bar on liability premised on concealed, latent structural defects in the construction of their home did not begin to run until such defects were discovered or reasonably discoverable. The Franzes assert that the proper test for determining when a cause of action accrues in construction cases should be to determine when the injured party discovers (or should have discovered) that the damage or injury has occurred and that it has resulted from the negligence of the builder. The Franzes cite *Hibbard v. Taylor,* Ky., 837 S.W.2d 500 (1992), applying the discovery rule in the context of a cause of action for legal negligence.

On the other hand, as authority for imputing the knowledge of the Careys concerning defects to the Franzes, First Lexington cites *Colony Coal and Coke Corp. v. Olinger,* 264 Ky. 775, 95 S.W.2d 597 (1936). This case holds that fraud or mistake in a deed which was known to, but not complained of, by a party to the deed could not be raised by persons holding under a subsequent deed from such party because the predecessor

> "... was present when the deed was made ... and thus knew all about it, and it appears to us he ratified what was done, but if he did not ratify it and wanted to complain of any fraud or mistake, he had but five years to do so [statute cited]; he did nothing, and [five years later] the bar fell, on all such claim of his and of appellees claiming under him." *Id.* 95 S.W.2d at 597.

The *Colony Coal and Coke Corp.* case is inapposite: it addresses whether a deed was intended to transfer timber and mineral

rights, not latent defects in construction. It presents no reason why the statute of limitation should bar the claim in this case assuming there are indeed latent structural defects attributable to original construction in violation of the building code, defects of which the Franzes had no knowledge, nor should have had knowledge, when they purchased their home.

First Lexington maintains that the present defects are identical to those they addressed and repaired when the Careys complained. But we are not addressing items visibly in need of repair, we are addressing latent structural problems which would not be observable to an unsophisticated homebuyer and the disrepair that results from such structural defects. It is not enough to say that such structural defects caused similar problems at an earlier time for a prior owner who then had them superficially corrected.

The more serious question here is not one of limitations. It is whether there is any recognized legal foundation for asserting a claim in the first place where damages relate solely to economic loss based on diminution in value; whether in the circumstances alleged in this case there is any claim for breach of warranty, for negligence or negligence *per se*, or for a statutory cause of action established by KRS 198B.130.

Although dismissing this case primarily on the basis of the statute of limitations, the trial court further explored the various legal theories asserted in the complaint, and concluded that none were viable. On the other hand, the Court of Appeals explored the same theories and concluded some were viable. We have accepted discretionary review and conclude that one of them, the cause of action stated under KRS 198B.130, should not have been dismissed.

## I. BREACH OF WARRANTY

 As previously stated, in *Crawley v. Terhune, supra,* this Court held as a matter of law "that in the sale of a new dwelling by the builder there is an implied warranty that in its major structural features the dwelling was constructed in a workmanlike manner and using suitable materials." 437 S.W.2d at 745. *Crawley* elevates the builder's failure to

so construct the dwelling to the status of a legally compensable wrong as a matter of law even though it is not a matter of contract. The reasons supporting extending the principle stated in *Crawley* beyond the initial buyer to subsequent purchasers in limited circumstances are well stated in the Court of Appeals' opinion. The Court of Appeals held that the Franzes have a cause of action for breach of an implied warranty of habitability upon proof of "latent defects which become manifest after the subsequent owner's purchase and which were not discoverable by reasonable inspection prior to purchase." The Court of Appeals' opinion, paraphrasing the decision in a New Hampshire case, *Lempke v. Dagenais,* 130 N.H. 782, 547 A.2d 290, 297 (1988), would limit such extension to "a reasonable period of time in light of surrounding circumstances," to proof "that the alleged defect was caused by the builder's workmanship," and to "the defenses available, including [proof] that the defects were not attributable to [the builder]; that the defects resulted from ordinary wear and tear; and that the previous owner made substantial changes in the property."

The movant, First Lexington, urges us to restrict the scope of a breach of warranty claim to buyers in privity with the builder, the limiting language in *Crawley v. Terhune, supra,* arguing "in the sale of a *used* house, the parties are on equal footing: the consumer/purchaser relies on the consumer/seller, *not* a 'professional seller,' to disclose problems or defects." While such arguments are not in themselves persuasive in present circumstances, where the home was practically new in terms of the reasonable expectation of the buying public, this Court has no policy for extending warranty law beyond the limitations of contract or statute.

As stated, the New Hampshire case, *Lempke v. Dagenais, supra,* is cited extensively and with approval in the Court of Appeals' Opinion. It recognizes an implied warranty of habitability under New Hampshire law from the builder/seller to subsequent purchasers from the original buyer in limited circumstances. It provides an excellent review of those cases from other jurisdictions and authoritative treatises which ad-

dress the problem. It recognizes that such warranty, strictly speaking, is not a contractual undertaking but an obligation "imposed by operation of law" as "a matter of public policy." 547 A.2d at 292. While we agree that *Lempke v. Dagenais* is a carefully written and well reasoned opinion, we also recognize that the results reached in that opinion follow in significant part from a broad view of public policy regarding warranties in New Hampshire which the Supreme Court of New Hampshire gleans from the "New Hampshire adoption of U.C.C. Alternative C which abolishes privity in implied warranty suits." 547 A.2d at 294. While the U.C.C. (the Uniform Commercial Code) does not apply, as such, to selling a home, the New Hampshire version of the U.C.C. at least provides a source from which to extrapolate a public policy.

Unfortunately, the Kentucky version of the U.C.C. does not provide such a service. On the contrary, in *Williams v. Fulmer*, Ky., 695 S.W.2d 411 (1985), we recognize the limiting nature of privity of contract requirement in the Kentucky version of the Uniform Commercial Code, KRS 355.2–318. We hold that breach of warranty is not a viable theory in a personal injury claim for a product sold in a defective condition unless there is privity of contract, except in limited circumstances specified in the statute.

If we are to extend *Crawley v. Terhune* to present circumstances, unlike New Hampshire, we must do so out of whole cloth. Strictly speaking, because the defective construction presently alleged relates to an improvement to real estate, it is not controlled by the U.C.C. Nevertheless, if this were simply a matter of real estate law, rather than of defective construction, this case would be governed by the principles adhered to in *Colony Coal & Coke Corp. v. Olinger*, 264 Ky. 775, 95 S.W.2d 597 (1936), limiting the subsequent purchaser to rights derived from the predecessor in title. The Majority of this Court is not prepared, as a matter of judicial policy, to extend the theory of a warranty implied in law beyond the kind of warranty statutorily created in Kentucky's version of the U.C.C. A step of this nature is a public policy to be decided by the legisla-ture. We find no public policy to extend warranty protection in the U.C.C.

## II. NEGLIGENCE

■ Having concluded that the builder's legal obligation here is not a matter of contract, and that there is no warranty implied in law in Kentucky to the builder/seller beyond the initial purchaser, we next address liability based on negligence or negligence *per se*. In *Saylor v. Hall*, Ky., 497 S.W.2d 218 (1973), we recognize a legal obligation to respond in damages for negligent construction despite the absence of privity. The case involved two children of tenants, one injured and one killed, crushed by a fireplace and mantle that collapsed due to defective construction. The argument made in the present case, as recited in the Court of Appeals' Opinion, is that "it seems capricious to deny recovery to a vigilant property owner who discovers a latent defect, which 'only' diminishes the value of his property, and allow recovery if he had 'waited' for a member of his family to be injured as a result of the defect." Nevertheless, this Court recognizes that tort recovery is contingent upon damage from a destructive occurrence as contrasted with economic loss related solely to diminution in value, even though, as to property damage, both may be measured by the cost of repair. *See Dealers Transport Company, Inc. v. Battery Distributing Company*, Ky., 402 S.W.2d 441 (1966), adopting Section 402A of the *Restatement (Second) of Torts* in defective products cases.

We do not go so far as the Court of Appeals' opinion in *Falcon Coal Co. v. Clark Equipment Co.*, Ky.App., 802 S.W.2d 947 (1990), limiting recovery under a products liability theory to damage or destruction of property "other" than the product itself. But we do recognize that to recover in tort one cannot prove only that a defect exists; one must further prove a damaging event. The Court of Appeals' opinion herein recognized this limitation as to the claim of negligence, but held it does not apply to warranty and statutory claims, and we agree.

■ Further, we agree with the Court of Appeals that this same analysis also applies to the Franzes' negligence *per se* claim,

because negligence *per se* "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care. *See Atherton Condominium Apartment–Owners Association Board of Directors v. Blume Development Company,* 115 Wash.2d 506, 799 P.2d 250 (1990)." KRS 446.070 elevates proof of violation of statutory standards to the status of negligence *per se,* by stating:

"A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

The interrelationship between the statutory standard and KRS 446.070 is illustrated by *Grayson Fraternal Order of Eagles v. Claywell,* Ky., 736 S.W.2d 328 (1987), involving a personal injury claim by a police officer against a tavern based on the unlawful sale of alcohol to an intoxicated patron. The statute violated, The Dram Shop Act, did not provide for a private right of action in either the body of the statute establishing the standard or elsewhere in the Chapter covering the subject matter, but KRS 446.070 made it a viable statutory standard of care for a negligence claim. As stated in *Grayson Fraternal Order of Eagles v. Claywell:*

"For instance, this rule has been applied to recognize a cause of action on behalf of a fire victim where the apartment building lacked adequate exits as required by the Building Code, *Higgins Investments Inc. v. Sturgill,* Ky., 509 S.W.2d 266 (1974), and to recognize a cause of action on behalf of a child visiting a tenant when the child was scalded as a result of the violation of the Plumbing Code, *Rietze v. Williams,* Ky., 458 S.W.2d 613 (1970)." 736 S.W.2d at 333.

Thus building code violations, if proved, constitute negligence *per se,* but the negligence *per se* theory does not apply here because there was no destructive occurrence as necessary before a cause of action accrues on this theory.

## III. STATUTORY CAUSE OF ACTION

The legislative grant of a private cause of action in KRS 198B.130, "[n]otwithstanding any other remedies available, [to] any person or party, ... damaged as a result of a violation of this Chapter or the uniform state building code," is distinguishable from a negligence *per se* action.

■ A private cause of action for violation of KRS Chapter 198B and the applicable building code is not dependant on KRS 446.070. KRS 198B.130 provides an independent statutory remedy, complete in itself, for violating any provision of KRS Chapter 198B or the uniform state building code enacted pursuant to this chapter. Nor does KRS 198B.130 limit the nature of the claim for damages to damages available in a tort action. It does not distinguish between damages related solely to diminution in value and damages caused by a specific actionable event or a destructive occurrence as with the traditional tort remedy. Reasonably interpreted, if a statutory violation has occurred, KRS 198B.130 requires payment of either the cost of repair to bring the property up to code compliance or payment of the diminution in fair market value of the property because of code infractions, whichever is less.

■ To interpret the statute otherwise would render the statute meaningless because a cause of action for code violations already exists without it under the theory of negligence *per se* in KRS 446.070. We will not reduce the statute to a useless absurdity by interpreting it as merely repetitive of a right that already exists to pursue a negligence *per se* claim if a destructive event occurs as a violation of the building code.

Nor do we construe the sentence added to the end of KRS 198B.130, which provides that the award may include "the cost of litigation, including reasonable attorney fees," as being the only purpose of the statute.

■ Finally, First Lexington maintains, and the trial court so held, that the Certificate of Occupancy issued by the Lexington Fayette Urban County Government Division of Building Inspection on September 4, 1985, should be a complete defense to this action. We hold, as did the Court of Appeals, this is, at most, "evidence of compliance (CABO

Code, Ch. 1, R–103)," rebuttable by a proof to the contrary.

■ The Court of Appeals noted that "judgment was granted on the pleadings ... [T]he moving party is deemed to have admitted the proof of his adversary's pleading for purposes of the motion. CR 12.03 [and cases cited]." However, even were this a summary judgment, the record before us presents sufficient question about the circumstances surrounding the issuance of the Certificate of Occupancy and sufficient evidence contradicting compliance with the code to withstand summary judgment. This includes the inspector's own finding at one point of "very poor workmanship" and the inconsistency that existed between the building permit and the home actually constructed.

Therefore, while we disagree with the Court of Appeals regarding extending the theory of breach of warranty to present circumstances, we otherwise affirm its decision, and we remand this case to the trial court for further proceedings consistent with this opinion.

STEPHENS, C.J., and LAMBERT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., concurs in Parts I and II and dissents by separate opinion as to Part III.

REYNOLDS and SPAIN, JJ., and SUE ELLEN PRATER, Special Justice, concur in Parts II and III.

SUE ELLEN PRATER, Special Justice, dissents by separate opinion as to Part I, in which REYNOLDS and SPAIN, JJ., join.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I must respectfully dissent from the majority opinion because I believe that in spite of rejecting the reasoning of the Court of Appeals' adoption of the New Hampshire case of *Lempke v. Dagenais,* 130 N.H. 782, 547 A.2d 290 (1988) the result reached is the same. Any extension of a right of recovery to subsequent purchasers is an extension of the implied warranty of habitability. Recovery in the absence of privity of contract with

the builder is inconsistent with existing Kentucky law. *Crawley v. Terhune,* Ky., 437 S.W.2d 743 (1969). No matter what name is attached to the right of recovery by the majority opinion, it remains an extension of the implied warranty of habitability to subsequent purchasers.

The words of the opinion admit that this Court should not create a cause of action out of "whole cloth" and rejects an opportunity to embrace an outright extension of contract law. It then however, creates that same cause of action by judicial interpretation of statutory authority.

The decision in *Crawley, supra,* was based on the existence of an implied warranty for a new home and related to the fact that the builder and purchaser had a contractual relationship. The warranty was an implied provision of the contract. I do not believe *Crawley* supports the extension of a warranty claim to subsequent purchasers.

I also find a problem with what is, regardless of the words used, an extension of the implied warranty when considered with the restrictions on the statute of limitations. This combination gives rise to a considerable burden being placed on homebuilders in Kentucky. This Court has previously restricted limitations on liability in tort actions. *Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809 (1991); *Tabler v. Wallace,* Ky., 704 S.W.2d 179 (1986). It now continues that trend by using statutory interpretation when in reality, it has judicially created a cause of action against a homebuilder by a subsequent purchaser of that building far remote in time.

The result is that a purchaser of a home from a person who is not the builder can bring suit against the original builder. This matter has been considered by the Supreme Court of Oklahoma who identified it as a "greatly increased potential tort liability faced by builders and others." *Jaworsky v. Frolich,* 850 P.2d 1052 (Ok.1992). In that case, a five year implied warranty extended to a remote purchaser with the cause of action accruing upon the completion of the home. Indeed, the fears of many builders that a prospective flood of litigation will follow could well be realized.

Various other states limit implied warranty liability against a remote purchaser in the same manner as does Oklahoma by setting the point of accrual at the time of initial occupancy and refraining from tolling the limitations period during repairs. *Jaworsky, supra; Cf. Barnes v. Mac Brown & Co., Inc.,* 264 Ind. 227, 342 N.E.2d 619 (1976). When such liability is not limited, the effect is "tantamount to imposing strict liability in tort." *Ellis v. Robert C. Morris, Inc.,* 128 N.H. 358, 513 A.2d 951 (1986).

The Arizona Supreme Court first determined that liability should extend "for a reasonable period of time depending on the component part of the house involved." *Hershey v. Rich Rosen Construction Co.,* 169 Ariz. 110, 817 P.2d 55 (Ct.App.1991). The effect was to make the builder responsible for all alleged defects occurring during all or a large portion of the useful life of the building. Subsequently, the Arizona Legislature passed a statute of repose insulating builders from implied warranty liability after a definite period of time. Ariz.Rev.Stat.Ann. § 12–552(C).

The Arizona solution is not available in Kentucky because this Court has already characterized a Kentucky law similar to that in Arizona as being "not a statute of limitations but a statute of repose" that extinguishes the claim before it exists. *Perkins, supra.* Any relief determined appropriate by the Legislature is seemingly blocked. *Perkins, supra; Wallace, supra.*

The expansion of liability whether under the guise of a contractual implied warranty of habitability or the judicially created interpretation based on a violation of the building code remains identical. The expansion of liability exposure creates a serious threat to the stability of the legitimate builders in the industry. There should be no concern for those builders who provide defective workmanship. Appropriate consideration should be given to the steps taken by builders such as First Lexington in regard to inspection, warranty to the original purchaser, repairs in accord with that warranty and re-inspection to verify the original repairs. To the extent that the cost of producing new residential buildings in this State will be increased because of a concern for remote claims, this matter may have grave consequences far beyond the contemplation of the original parties to this building contract.

Protecting buyers from a reduction in habitability and value caused by defective construction is a worthy goal. The public policy which guides the adoption of such protection should rest in the sound judgment of the General Assembly and not the opinions of this Court. Any action for recovery by subsequent purchasers remains a judicially created recovery for a breach of the implied warranty of habitability without the privity of contract required between the buyer and the builder. Creation of such laws by the judiciary is improper regardless of how it is hidden in the guise of statutory interpretation.

SUE ELLEN PRATER, Special Justice, concurring in part and dissenting in part.

I concur in the majority opinion regarding negligence and the Court's interpretation of the statutory cause of action. I respectfully dissent from the majority's opinion in regards to the requirement of privity between a builder and a subsequent purchaser. The majority concludes that the Kentucky legislature's failure to adopt alternative B or alternative C of the U.C.C. evidences a present legislative intent to deny warranty protection to a home buyer who is not in privity with the builder. I do not so interpret the legislature's intent.

In 1985, this Court held that under the U.C.C. breach of warranty is only viable when privity exists between the manufacturer and the injured party or if the injured party is one of the persons described in the statute. *Williams v. Fulmer,* Ky., 695 S.W.2d 411 (1985). The Appellant in that case referred the Court to official "Code Commentary" which states U.C.C. Alternative A "is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." The Court noted that the commentary was not incorporated in nor referred to by our statute.

In 1990, the legislature enacted KRS 355.2A which are U.C.C. provisions dealing with leases. This statute contains KRS 355.2A–216 which is parallel to KRS 355.2–318. Both statutes provide a warranty "to any natural person who is in the family or household of the lessee or who is a guest in the lessee's home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty." However, the legislature did not stop there in enacting KRS 355.2A–216. The legislature adopted the commentary into the statute. The second sentence of the statute states, "This section does not displace principles of law and equity that extend a warranty to or for the benefit of a lessee to other persons." The legislature responded to this Court's decision in *Williams v. Fulmer.* By adopting the commentary, the legislature signaled to this Court that some extensions of warranties "to other persons" are necessary because of equity considerations and are thereby matters to be considered and decided by this Court.

The statute that this Court today construes as providing a private right of action is further indication from the legislature that the public policy of this state supports the extension of warranty protection to persons other than those in privity with the builder. KRS 198B.130 allows recovery by "any person or party, in an individual capacity or on behalf of a class of persons or parties." This statute is wholly inconsistent with a public policy which limits a person's right of action for breach of warranty of habitability based upon the question of privity.

Whatever the legislature's intent as to the public policy regarding privity in cases concerning U.C.C. sales or leases, the warranty of habitability as to workmanship and suitability of materials is a judicial creation in this state. In *Crawley v. Terhune,* Ky., 437 S.W.2d 743 (1969), this Court adopted this warranty as a common law principle. This judicial action was taken in response to a need which was not covered by any statute. Twenty-five years after the adoption of this judicial creation we are again confronted with a need.

While I concur in the majority opinion's interpretation of KRS 198B.130, I am concerned that the protections accorded by this statute are not uniformly available to all residents of the Commonwealth. Applying the warranty of habitability to all non-privity home buyers state wide would not usurp the legislature's policy-making authority. The legislature has already made its policy statement by the plain language of KRS 198B.130. Extending the warranty would only insure a uniformity in protection for citizens wherever they reside in this Commonwealth.

I dissent today because I am concerned about the message which is being sent by the majority's opinion. Although the majority opinion acknowledges the validity of the reasoning of the New Hampshire court and laments the limitations it perceives in Kentucky U.C.C. provisions regarding privity of contract requirements, the Court will not act to follow a public policy which it knows to be in the best interest of the citizens of this Commonwealth. We do not need statistics to show us that Kentucky has experienced increasing mobility of our population. Like the other states who have considered this privity question, we also have buyers with little experience and knowledge about construction and builders in this state with superior knowledge, skill and experience in the construction of houses. The majority does not deny that these and other reasons discussed by the New Hampshire court for the extension of the warranty are valid and good reasons for extending the warranty.

In 1986, in a schizophrenic decision which is *Ellis v. Robert C. Morris, Inc.,* 128 N.H. 358, 513 A.2d 951 (1986), the New Hampshire Supreme Court refused to extend the warranty of habitability to persons not in privity with the builder. Two years later, in the well reasoned opinion that is *Lempke v. Dagenais,* the New Hampshire Supreme Court overturned its own precedent with only one dissenting vote. Today the majority opinion rationalizes its decision by blaming its inaction on the legislature. We can only hope that in the near future this Supreme Court will be presented with an opportunity to reconsider this decision. Times have changed, needs have changed, and this Court created

law must change. I would affirm the decision of the Court of Appeals on all issues.

REYNOLDS and SPAIN, JJ., join.