**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0096n.06

Filed: February 7, 2007

No. 06-5445

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **Stephen and Amy Waterfill,** | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | |
| | ) | |
| **v.** | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **National Molding Corporation,** | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| **Defendant-Appellee.** | ) | |
| | ) | |
| | ) | |

BEFORE:     Boggs, Chief Judge; Merritt and Moore, Circuit Judges

        **MERRITT, Circuit Judge.**   Plaintiffs, Stephen and Amy Waterfill, appeal the district

court's grant of summary judgment to the defendant, National Molding Corporation, on their state

law claims of product liability, failure to warn and breach of warranty.  The claims arise from

injuries suffered by Stephen Waterfill when he fell from a tree-mounted deer stand and his safety

belt, which contained a plastic buckle manufactured by National Molding, broke.  After the belt

broke, Waterfill fell approximately fifteen feet to the ground, fracturing his hip and elbow.  The

district court's jurisdiction was based on diversity of parties and a minimum of $75,000 in

controversy, 28 U.S.C. § 1332(a)(1); Kentucky law governs the plaintiffs' causes of action.  Because

the Waterfills have not presented any evidence showing that the plastic buckle was defective and do not have privity with National Molding, we affirm the decision of the district court.

## I. Background

Stephen Waterfill fell from a deer stand located in a tree in Harrodsburg, Kentucky, on September 25, 2003. As a result of the fall, he fractured his right hip and right elbow. Mr. Waterfill asserts that the injuries left him with minimal use of his right arm.

Mr. Waterfill claims that the deer stand he was using was manufactured by a company named "Loggy Bayou." He described the stand as a "lock-on" stand which used a rope device to secure the stand to the tree. Mr. Waterfill testified in a deposition that the stand was located between fifteen and twenty feet above the ground. On the day in question, Mr. Waterfill climbed up to the tree stand and attached a safety belt positioned around the middle of his back to the tree.

The Loggy Bayou deer stand was not equipped with any kind of safety harness. The strap Mr. Waterfill was using had come with a deer stand made by Buck Pro Ambusher that he had purchased previously. The safety strap consisted of a nylon strap assembly and a plastic buckle. Mr. Waterfill testified that he placed the strap around his waist and fed it through the buckle twice. The strap would tighten when he pulled down on it.

Mr. Waterfill testified that he sat in the tree stand for approximately two and a half hours before falling. He believes that he fell asleep and then woke up when he began to fall forward from the stand. Shortly thereafter, the safety strap caught Mr. Waterfill, swinging him below the stand. The strap held him for only a moment, though, before breaking and sending Mr. Waterfill crashing

to the ground below. Mr. Waterfill testified that both the nylon strap and the plastic buckle broke when he fell, but he is unsure which component broke first.

National Molding Company manufactured the molded plastic buckle that was incorporated into the safety strap, but did not manufacture any of the other components of the safety strap or the deer stand used by Mr. Waterfill. National Molding is in the business of designing and manufacturing molded plastic products; the buckle at issue was sold under the Duraflex label, a brand of specialty buckles and other fastener hardware. National Molding subjects its Duraflex buckles to strength testing periodically throughout the year, but the company's policy is that the suitability of a Duraflex buckle must be verified by the equipment manufacturer that incorporates it into a finished product. National Molding sells the Duraflex buckles to distributors[1] who, in turn, market the buckles to third parties. The company is not involved in the subsequent sale of the buckles and does not engage in any business dealings with the third parties that purchase the buckles from the distributors.

In their complaint, the Waterfills allege that National Molding is strictly liable for failing to properly design or manufacture the Duraflex buckle and for failing to warn and instruct concerning the proper use of the buckle. They also assert that National Molding breached the express or implied warranty that the buckle was merchantable and fit for the ordinary purposes for which such a product is used. The district court granted summary judgment to National Molding on all of the plaintiffs' claims. We review the grant of summary judgment de novo.

---

[1]National Molding has sold Duraflex buckles to more than two dozen distributors in the past ten years.

## II. Analysis

## A. Strict Product Liability

Kentucky courts have adopted the Restatement (Second) of Torts, Section 402A, which states that a product is defective for the purposes of strict products liability if it is "in a defective condition unreasonably dangerous to the user or consumer or his property." *Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50, 55 (Ky. Ct. App. 1999). Further, to show that a component part is defective, a plaintiff must show that it was defective when it was sold by the manufacturer. *Id.* at 56. "A component part supplier has no duty, independent of the completed product manufacturer, to analyze the design of the completed product which incorporates its non-defective component part." *Id.* at 57 (quoting *Childress v. Gresen Mfg. Co.*, 888 F.2d 45, 49 (6th Cir. 1989)).

The Waterfills claim that there is strong evidence that the Defendant's product was defective, but the record is devoid of any such evidence. The record reveals that more than two dozen distributors have purchased Duraflex buckles over the past ten years, but plaintiffs have not presented any evidence that these buckles are not properly designed for these purchases, nor have they shown that the buckles are unreasonably dangerous. More to the point, plaintiffs present no evidence that the Duraflex buckle was unreasonably dangerous when it was incorporated into the safety harness at issue in this case. In his deposition, Mr. Waterfill was unable to recall whether the buckle broke before the strap or vice versa. Even if he testified definitively that the buckle broke first, this would not be evidence that the buckle was defective when incorporated into the safety strap. At most, it would suggest that the strap as assembled may be defective.

The Waterfills claim they have raised a material issue of fact regarding the defectiveness of the buckle through the expert testimony of Dr. Vladimir Karwowski. According to the Waterfills, Dr. Karwowski has opined that the buckle was defective, and that the accident occurred when the buckle failed. The Waterfills' characterization of Dr. Karwowski's opinion, however, is the only presentation of his findings in the record. The Waterfills have failed to produce a report by Dr. Karwowski and have failed to make him available for a deposition by National Molding. Their bald assertion of Dr. Karwowski's findings does not constitute evidence and is, therefore, insufficient to defeat a motion for summary judgment.

Even if Dr. Karwowski had submitted an affidavit stating the claims made on his behalf, the Waterfills would still be unable to defeat National Molding's summary judgment motion. The sum total of Dr. Karwowski's opinion, as relayed by the Waterfills, is that the buckle broke first, causing the nylon strap to break.[2] Since Mr. Waterfill weighed less than the designed capacity of the buckle, the Waterfills conclude, the failure of the defective buckle caused Mr. Waterfill to come crashing down to earth. Assuming that all this were in evidence, it is still not sufficient to show that the buckle was defective when National Molding sold it to its distributor. It only establishes that the buckle, as it existed years after its manufacture and as incorporated into the safety belt, was defective; under this scenario liability may attach to the manufacturer of the safety harness, but not to National Molding. Since the Waterfills cannot show that the buckle was defective when it was

---

[2] National Molding proffered a contrasting opinion of which component part failed first. Harold Smith, P.E., opined that the strap failed first, and that failure caused the buckle to break.

sold by National Molding, the district court was correct in granting summary judgment to National Molding on the Waterfills' strict products liability claim.

**B. Failure to Warn**

Under Kentucky law, a component part manufacturer generally has no duty to warn end-users of a finished product of the potentially dangerous nature of its parts in that product. In *Worldwide Equipment*, the Kentucky Court of Appeals held that the manufacturer of a cab-chassis, which was sold to a distributor and then modified and incorporated into a dump truck by a third party, did not have a duty to warn end-users of the dangers posed by the cab-chassis. 11 S.W.3d at 57. The court reasoned that, given the multitude of possible end uses of the cab-chassis, imposing a duty to monitor its use on the manufacturer imposed "too great a burden." *Id*. So long as the component part is not defective when sold by its manufacturer, then, no duty to warn can attach to the component manufacturer.

Here, National Molding manufactured the Duraflex buckle, but played no role in its incorporation into the safety harness. The plaintiffs have presented no evidence that National Molding ever analyzed the completed design of the safety harness. Further, as discussed above, the Waterfills are unable to show that the buckle was defective when sold by National Molding. Since the Waterfills are unable to show that National Molding was under any duty to warn an end-user of the safety harness, the district court did not err in granting summary judgment to National Molding.

**C. Breach of Warranty**

Under Kentucky law, liability for breach of warranty is governed by the terms of the contract and statutory provisions of Kentucky's Uniform Commercial Code. *Williams v. Fulmer*, 695 S.W.2d

411, 413 (Ky. 1985). Since there was no contract between the Waterfills and National Molding, Kentucky Revised Statute § 355.2-318 controls this cause of action. Under this statute, claims for breach of express or implied warranties may proceed only where there is privity between the parties. *Real Estate Mktg. v. Franz*, 885 S.W.2d 921, 926 (Ky. 1994).

In this case, privity existed only between National Molding and its distributors, who were the immediate purchasers of its Duraflex buckles. Since the Waterfills do not present any evidence of privity between themselves and National Molding, the district court was correct in granting summary judgment to National Molding on the breach of warranty claims.

For the foregoing reasons, we affirm the decision of the district court.