RENDERED: MAY 23, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-0665-MR

CHAD REHKAMP; AND
AMANDA REHKAMP                                              APPELLANTS


                        APPEAL FROM BOONE CIRCUIT COURT
v.                      HONORABLE JAMES R. SCHRAND, JUDGE
                        ACTION NO. 22-CI-00606


DREES COMPANY                                                  APPELLEE


                            OPINION
                            AFFIRMING

                        ** ** ** ** **

BEFORE: L. JONES, KAREM, AND McNEILL JUDGES.

KAREM, JUDGE: Chad and Amanda Rehkamp ("the Rehkamps," collectively)

filed suit against the Drees Company ("Drees") to recoup plumbing costs expended

to repair their home which was built by Drees approximately 20 years earlier. The

Rehkamps filed claims based on KRS[1] 198B.130, negligence and negligence *per se*. The trial court granted Drees' motion for summary judgment as to all claims. This appeal followed only as to the court's decision regarding the negligence and negligence *per se* claims. After careful consideration of the law and facts, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Drees began construction on the home in question located in Florence, Kentucky. Construction was completed in 2003, and the home was sold to the original owners of the property. The Rehkamps were the fifth owners of the home, having purchased it from Eric and Jessica Devores on October 29, 2021. None of the owners, prior to the Rehkamps, reported experiencing plumbing problems other than clogged drains.

However, shortly after purchasing the property, the Rehkamps began experiencing a variety of issues with the plumbing. On November 17, 2021, they contacted a plumbing company regarding water "coming out of" the wet bar. Then, on November 20th and 29th, they experienced sewage backups causing them to contact the plumbing company again. On January 18, 2022, water leaked through their ceiling lights. The next day, on January 19th and again on February 2nd and February 15th, they experienced sewage backups.

---

[1] Kentucky Revised Statute.

Following the last sewage backup, a plumbing company inspected the pipes with a scope camera. They concluded that the cause of the problem was a "belly" within the sewer line which had been there since the day the plumbing system was installed by Drees. The Rehkamps filed suit against Drees based on statutory claims arising from KRS 198B.130 and common law claims of negligence and/or negligence *per se*. The trial court granted Drees' motion for summary judgment as to all claims. The Rehkamps only appealed the court's decision as to the common law claims.

## PRELIMINARY ISSUE

Zealous advocacy by attorneys for their client is necessary and expected by the Court. However, passionate arguments should never stretch the rules of civility to include offensive tactics by treating people with discourtesy or disrespect, including towards opposing counsel. This basic tenet is even enshrined in Kentucky's Rules of Professional Conduct both in the preamble and the rules themselves:

SCR[2] 3.130 Kentucky Rules of Professional Conduct
### Preamble: A Lawyer's Responsibilities

VI. A lawyer's conduct shall conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. *A lawyer shall use the law's procedures only for legitimate purposes and not to harass or intimidate others.* A

---

[2] Rule of the Kentucky Supreme Court.

-3-

lawyer shall demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

. . .

X. In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person while earning a satisfactory living. The Rules of Professional Conduct often prescribe terms for resolving such conflicts. Within the framework of these Rules, however, many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules. *These principles include the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system.*

(Emphasis added.)

SCR 3.130(4.4)(a)

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

Unfortunately, Appellant's counsel failed to adhere to the rules of civility in their brief.[3] Appellant's counsel is thus put on notice that this behavior will not be tolerated by the Court. Because there were no other instances of disrespectful language in their briefs, we take no action at this time. However, we expect that counsel will, from this point forward, conduct themselves in adherence to the structures of the Code of Conduct in every level of legal practice both in and out of the courtroom.

## ANALYSIS

## STANDARD OF REVIEW

At the outset of our analysis, we must identify the standard of review for an appeal when the trial judge grants a motion for summary judgment.

> In considering a motion for summary judgment, a trial court must view the record in a light most favorable to the non-moving party, resolving all doubts in its favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). The trial court may grant summary judgment only if it concludes that no disputed issues of material fact exist for trial. *Id.* On appeal of a summary judgment, we must determine whether the trial court correctly found that the moving party was entitled to a judgment as a matter of law. *Id.* Because summary judgment involves questions of law, we need not defer to the trial court's conclusions; accordingly, we review the

---

[3] Specifically, Appellant's counsel wrote, "[w]hether Appellee's ignorance of the obvious parallels between the economic loss rule and the *Franz* Court's application of the rule is due to its willful ignorance or inability to conduct a single stroke of logic is hardly relevant, but its denial of the unmistakable application of the rule and subsequent contention that the rule is not at issue are utterly absurd assertions . . . ."

> record *de novo.  Blevins v. Moran*, 12 S.W.3d 698, 700-01 (Ky. App. 2000).

*Waugh v. Parker*, 584 S.W.3d 748, 750-51 (Ky. 2019).

## ECONOMIC LOSS RULE

Although all parties to this litigation agree that the purchase of the property in question was a *consumer* transaction, the analysis of the case *sub judice* requires a dive into the murky waters of the economic loss rule which governs the ability of a *commercial* purchaser to recoup damages if the product they purchased malfunctions.  As explained by the Commonwealth's highest court "[t]he 'economic loss rule' prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011).  The Court went on to explain the state of the law in federal court.

> Aligning itself with what over two decades later is clearly the majority position nationwide, the Supreme Court held that whether a product deteriorates over time or destroys itself in a "calamitous event," the rule precludes recovery in tort for repair costs, lost profits and other items that essentially equate with "the failure of the purchaser to receive the benefit of its bargain-traditionally the core concern of contract law."  Damages for injuries to persons or "other property" may be recovered in tort but a case involving purely economic losses requires resort to the parties' contract and any express or implied warranties.  A decade later . . . the Supreme Court confronted what constitutes the "product itself" for

purposes of the economic loss rule and, ultimately, held that "[w]hen a manufacturer places an item in the stream of commerce by selling it to an Initial User, that item is the 'product itself.'"

*Id.* (citations omitted).

In *Real Estate Marketing, Inc. v. Franz,* 885 S.W.2d 921 (Ky.1994) *overruled by Giddings*, 348 S.W.3d at, the Supreme Court of Kentucky grappled with an issue similar to the one in the case at bar. The second purchasers of a home, the Franzes, sued the builder of their home alleging latent structural defects resulting in water leaking in the front hallway, warping of the parquet and linoleum flooring, and growth of mold and mildew. *Id.* at 923. The Court concluded that "the builder's legal obligation here is not a matter of contract, and that there is no warranty implied in law in Kentucky to the builder/seller beyond the initial purchaser . . ." and thus the Court turned to the issues of liability based on negligence or negligence *per se. Id.* at 926.

**CALAMITOUS EVENT**

In its analysis of the tort claims, the *Franz* Court distinguished between claims arising from a calamitous event[4] and those claims arising from economic loss related solely to diminutions in the value of property. *Franz*, 885

---

[4] *See Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973), where the Court recognized a legal obligation to respond in damages for negligent construction despite the absence of privity in a case involving two children of tenants, one injured and one killed, crushed by a fireplace and mantle that collapsed due to defective construction.

S.W.2d at 926. The Court ultimately held that negligence or negligence *per se* claims could not be asserted absent a destructive occurrence. "[T]he negligence *per se* theory does not apply here because there was no destructive occurrence as necessary before a cause of action accrues on this theory." *Id*. at 927. Notably, the Court did not mention the application, or lack thereof, of the economic loss rule by name. And, more importantly, the Rehkamps admit there was no calamitous event in the case *sub judice*.

## COMMERCIAL TRANSACTIONS

The *Franz* opinion was followed 17 years later with an opinion from the Supreme Court opining on the traditional use of the economic loss rule – a product, purchased through a commercial transaction, which failed during use – *Giddings*, 348 S.W.3d at 733. In the case at bar, the parties are at odds over the application of the holding in *Franz* and whether the Court's subsequent opinion overruling *Franz* in *Giddings* invokes the application of the economic loss rule. The Rehkamps maintain that the economic loss rule does not apply in consumer transactions, and thus should not be applied to the case at bar.

In *Giddings*, Ingersoll Rand purchased a diffuser cell system from Giddings & Lewis ("Giddings"). 348 S.W.3d at 733-34. After seven years of continuous service in Ingersoll Rand's Mayfield, Kentucky plant, a 3,400-pound clamp, a 1,500-pound pallet, and a large chunk of spinning metal flew off the

system and catapulted around the workspace in the plant. *Id.* at 734. Luckily, no one was injured and there was only limited damage to property beyond the system itself. At the time, the express warranty that was written into the parties' purchase contract had expired. Ingersoll Rand subsequently filed a claim with their insurance which paid almost $3 million for repairs. *Id.* The insurance company then filed suit against Giddings alleging breach of implied warranty, breach of contract, negligence, strict liability, negligent misrepresentation, and fraud by omission. *Id.* The Court of Appeals affirmed the trial court's decision that the economic loss rule applied and that the calamitous event exception should be rejected. *Id.* at 735.

In its analysis, the Court opined that *Franz* "was not a classic case for application of the economic loss rule because there was no contract between . . . [the] provider of construction management services [] and . . . [the] contractor who provided 'general trades' work . . . . As a result, there was no opportunity to negotiate the terms of their relationship. Moreover, the dispute was not over a product but rather the provision of construction services." *Id.* at 737. Following a thorough analysis of the facts and law, the Court ultimately adopted the economic loss rule.

> Faced squarely with a classic case for application of the economic loss rule, we hold that the rule applies in Kentucky. We adopt the *East River Steamship* [*Corp. v. Transamerica Delaval*] Court's holding that "a

-9-

manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." [476 U.S. 858, 871, 106 S. Ct. 2296, 2302, 90 L. Ed. 2d 865 (1986)]. This rule recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code. *See* Kentucky Revised Statutes (KRS) 355.2-101 *et seq.* Like the United States Supreme Court, we believe the parties' allocation of risk by contract should control without disturbance by the courts via product liability theories borne of a public policy interest in protecting people and their property from a dangerous product. *Id.* at 867, 106 S. Ct. 2295. Thus, costs for repair or replacement of the product itself, lost profits and similar economic losses cannot be recovered pursuant to negligence or strict liability theories but are recoverable only under the parties' contract, including any express or implied warranties. Losses for injuries to people and to "other property," in these commercial transactions, remain subject to the traditional product liability theories. This holding is entirely consistent with the latest Restatement of Torts which allows the buyer of a defective product to recover in tort for injuries to persons or other property but not for economic losses. *See* Restatement (Third) of Torts: Products Liability §§ 1 and 21(1998).

*Id*. at 738.

The Court then turned its attention to the calamitous event exception to the economic loss rule. Notably, the Court rendered a narrow decision applicable to commercial transactions only. "Having thoroughly considered the 'calamitous event' rationale and its application in practice, we decline to adopt it as an exception to Kentucky's economic loss rule. To the extent *Franz*'s alluded-to

limitation of *Falcon Coal* [*Co. v. Clark Equipment Co.*, 802 S.W.2d 947 (Ky. App. 1990),] can be read to suggest that a *commercial purchaser* can recover economic losses under a strict liability theory if a destructive event damages the product itself, *Franz* is hereby overruled." *Id*. at 741 (emphasis added).

## CONCLUSION

The Rehkamps argue that whether the economic loss rule is applied to consumer transactions in Kentucky is unclear. They would have us look to the federal courts' supposition as to what our Kentucky Supreme Court would do. However, while a federal court's opinion may be persuasive, it is not binding. *United States, ex rel. United States Att'ys ex rel. Eastern, Western Districts of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136, 147 (Ky. 2014). We decline to presuppose how the Supreme Court would rule in a consumer transaction, and further, we do not find federal law persuasive in this case.

Instead, we look to the state of the law today, wherein the Supreme Court in *Giddings* specifically limited their opinion, overruling *Franz*, to commercial transactions. *Giddings*, 348 S.W.3d at 741. Therefore, we agree that *Franz* applies the economic loss rule to consumer transactions mandating that damages recovered be dictated by the terms of the contract between the parties. Here, the Rehkamps were not in privity with Drees and are thus precluded from recovering damages under contract theory. However, *Franz* also endorsed the

-11-

calamitous event exception to the economic loss rule.  But in the case *sub judice*, as in *Franz*, there was no calamitous event.  Therefore, we agree with the trial court that the Rehkamps' claims are neither a commercial transaction nor a calamitous event and were properly dismissed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Brandon N. Voelker
Covington, Kentucky

BRIEF FOR APPELLEE:

Edward P. Akin
Kevin L. Swick
Cincinnati, Ohio