our purposes, it is enough that Mt. Lebanon had the knowledge, skill, and resources to develop and operate a complex commercial venture for over sixteen years.

### VI.

Mt. Lebanon further argues that the Kentucky Supreme Court would adopt an exception to the economic loss doctrine where the injury to the product created a serious risk of injury to a person or property. While courts are divided over this exception, Frumer & Friedman § 13.14[2], those that have adopted it are in the minority. *Id.* § 13.14[2]. Moreover, "all relevant evidence" suggests that the Kentucky Supreme Court would not adopt this exception. *Bailey*, 770 F.2d at 604. The Supreme Court in *East River* rejected it, 476 U.S. at 870, as have the authors of the Restatement (Third) of Torts: Products Liability in section 21 comment d. We therefore predict that the Kentucky Supreme Court would reject a serious risk of injury exception to the economic loss rule.

Mt. Lebanon also suggests that punitive damages should be available in this case. Because, as Mt. Lebanon concedes, this issue depends upon the non-applicability of the economic loss doctrine to this case, we do not need to address it.

Finally, in its reply brief, Mt. Lebanon argues that Hoover had a duty to warn it of the defective trusses. Because this argument was not raised in Mt. Lebanon's opening brief, it has been waived. *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996).

For the foregoing reasons, we conclude that the economic loss doctrine bars Mt. Lebanon's tort claims. The district court's judgment is, therefore, affirmed.

**AFFIRMED**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0015P (6th Cir.)
File Name: 02a0015p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

| | |
|---|---|
| MT. LEBANON PERSONAL CARE HOME, INC., *Plaintiff-Appellant,* v. HOOVER UNIVERSAL, INC.; JOHNSON CONTROLS, INC., *Defendants-Appellees.* | No. 00-5696 |

Appeal from the United States District Court for the Western District of Kentucky at Louisville. No. 99-00372—Edward H. Johnstone, Senior District Judge.

Argued: August 1, 2001

Decided and Filed: January 11, 2002

Before: CLAY, GILMAN, and WALLACE, Circuit Judges.

---

*The Honorable J. Clifford Wallace, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

---

**COUNSEL**

---

**ARGUED:**    F. Larkin Fore, FORE, MILLER & SCHWARTZ, Louisville, Kentucky, for Appellant. Richard K. Wray, SACHNOFF & WEAVER, LTD., Chicago, Illinois, for Appellees. **ON BRIEF:** F. Larkin Fore, Joseph C. Spalding, FORE, MILLER & SCHWARTZ, Louisville, Kentucky, for Appellant. Richard K. Wray, SACHNOFF & WEAVER, LTD., Chicago, Illinois, David T. Schaefer, WOODWARD, HOBSON & FULTON, Louisville, Kentucky, for Appellees.

---

**OPINION**

---

J. CLIFFORD WALLACE, Senior Circuit Judge. Mt. Lebanon Personal Care Home, Inc. (Mt. Lebanon) appeals from the district court's summary judgment for Hoover Universal, Inc. (Hoover) on Mt. Lebanon's tort/product-liability claims. The district court held that the economic loss doctrine bars Mt. Lebanon's tort claims. The district court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We **AFFIRM**.

I.

Mt. Lebanon is a non-profit corporation owned by the New Zion Baptist Church. In 1981 and 1982 it hired a contractor and an engineer to build a nursing home facility which can serve approximately 122 residents. These residents are primarily Medicare and Medicaid patients. In July 1998, a structural failure occurred in the nursing home's cafeteria, causing Mt. Lebanon to abandon the cafeteria. A year later a second failure occurred, and upon the recommendation of its structural engineer, Mt. Lebanon evacuated the facility. It has been unoccupied since the evacuation.

suppliers. If we were to accept Mt. Lebanon's argument, we would apply the economic loss rule to parties acting as their own general contractor (because they enter into contracts directly with sub-contractors and material suppliers) but not to parties who hired a general contractor. In our view, the better approach is to apply the economic loss rule if the purchasing party had the opportunity to allocate the risk of loss by contract. That the allocation occurred indirectly is of no matter. Parties to complex ventures, especially in the construction industry, often allocate risk vicariously for efficiency's sake. What does matter is that Mt. Lebanon had the purview of the venture in mind when it hired the general contractor. In other words, we anticipate that Kentucky's economic loss rule would prevent Mt. Lebanon from recovering from Hoover for economic loss as long as Mt. Lebanon knew that its general contractor would employ Hoover or an entity like Hoover to contribute to the construction of the nursing home.

Mt. Lebanon also argues that it had no opportunity to obtain a warranty. This is the privity argument rephrased. We hold that Mt. Lebanon had an opportunity to obtain a warranty through its general contractor and, consequently, there is no reason to decide whether application of the economic loss rule requires such an opportunity.

V.

Mt. Lebanon further argues that the economic loss rule should not apply because it did not have *equal* bargaining power with Hoover. *Bowling Green*, the case Mt. Lebanon cites for this proposition, does not support Mt. Lebanon's position. 902 F. Supp. 134. In *Bowling Green*, the court merely stated that the application of the economic loss rule was "particularly appropriate" on the facts because the "parties were on equal footing." *Id.* at 138. We know of no case requiring exact parity in bargaining power. Moreover, the implications of such a rule are troubling as it would create great uncertainty in commercial contractual relationships. For

Hoover contends that Mt. Lebanon failed to raise this argument in the district court. While Mt. Lebanon may not have employed the same words it uses on appeal, it did argue that the economic loss doctrine should not extend to Hoover because it had no opportunity to negotiate a warranty with Hoover. Therefore, we will decide the issue.

Courts are divided over whether the economic loss rule immunizes potential defendants who are not in privity with a plaintiff. Frumer & Friedman § 13.14[5]. The Kentucky Supreme Court has not addressed this question. Moreover, Mt. Lebanon's authority for this point does not support the argument it advances. It cites *Bowling Green Municipal Utilities v. Thomason Lumber Co.*, 902 F. Supp. 134 (W.D. Ky. 1995). However, nowhere does *Bowling Green* hold that Kentucky's economic loss rule only applies to parties that are in privity. Mt Lebanon also cites *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236 (6th Cir. 1994). This case is of no help to Mt. Lebanon either, however, because it anticipates Michigan law not Kentucky law. What is more, while some portions of the *Detroit Edison* opinion assume that parties to a suit involving economic loss will be in privity, nowhere does the court hold that privity is a requirement. Indeed, since the parties were in privity in *Detroit Edison*, the court had no occasion to address the privity issue raised here. Consequently, we will look elsewhere for guidance.

We believe the Kentucky Supreme Court would apply the economic loss rule to Hoover even though Hoover did not deal directly with Mt. Lebanon. Plaintiffs may bring product liability suits against parties that are down the line of distribution and with whom they are not in privity. Frumer & Friedman § [6]. As a matter of fairness, the economic loss product liability exemption should extend down the line as well. Moreover, the reasons for the economic loss rule apply with equal force whether or not there is privity–at least in this case. Mt. Lebanon contracted with a builder to construct the nursing home. It no doubt knew that its general contractor would work with numerous sub-contractors and material

According to Mt. Lebanon, the structural failures were caused by fire retardant chemicals used to treat the lumber in the building's trusses. Hoover manufactured the chemicals, and although the record is not clear, may also have been responsible for the lumber used in the trusses in the Mt. Lebanon facility.

In May 1999, Mt. Lebanon filed this diversity action against Hoover alleging 1) strict liability; 2) violation of express warranties; 3) violation of implied warranties; 4) negligent misrepresentation; 5) negligence; 6) gross negligence; and 7) malice. In April 2000, the district court granted Hoover's motion for summary judgment. It dismissed Mt. Lebanon's tort claims (claims 1 and 4-7) as being foreclosed by the economic loss doctrine. It dismissed Mt. Lebanon's warranty claims (claims 2 and 3) both because there was no privity between Mt. Lebanon and Hoover and because the Kentucky statute of limitations had long since run.

We review a district court's summary judgment de novo. *Little Caesar Enters v. OPPCO, LLC*, 219 F.3d 547, 550 (6th Cir. 2000). We will uphold the district court if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing an absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In this diversity action we apply the substantive law of Kentucky "in accordance with the then-controlling decision of [Kentucky's highest court]." *Pedigo v. Unum Life Ins. Co. of Am.*, 145 F.3d 804, 808 (6th Cir. 1998) (internal quotation marks omitted).

## II.

The economic loss rule bars recovery in tort for economic loss. Economic loss is both loss in the value of a product caused by a defect in that product (direct economic loss) and consequential loss flowing from the defect, such as lost profits (consequential economic loss). Louis R. Frumer & Melvin I. Friedman, Products Liability, § 13.11[1] (2000) (hereafter, Frumer & Friedman). The economic loss rule marks the border between tort and contract law. Where tort law, primarily out of a concern for safety, fixes the responsibility for a defective product directly on the parties responsible for placing the product into the stream of commerce, contract law gives the parties to a venture the freedom to allocate risk as they see fit. Were there no economic loss rule, "contract law [might] drown in a sea of tort." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986).

> Three policies support applying the economic loss doctrine to commercial transactions: (1) it maintains the historical distinction between tort and contract law; (2) it protects parties' freedom to allocate economic risk by contract; and (3) it encourages the party best situated to assess the risk of economic loss, usually the purchaser, to assume, allocate, or insure against that risk.

Frumer & Friedman § 13.11[1].

A large majority of jurisdictions in this country have adopted the economic loss rule. *Id.* at § 13.11[1] n.1.4-1.5. While a small minority of these jurisdictions have limited the rule to business purchases, most apply it to both business and consumer purchases. *Id.* at § 13.11[3]. In *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 955 F.2d 1043, 1050 (6th Cir. 1992), we anticipated that the Kentucky Supreme Court would adopt the economic loss rule "in a product liability action based upon negligence."

As stated earlier, the economic loss rule was established to preserve the border between contract and tort law. Where tort law is well-suited to redressing injuries to persons or property, contract law is well-suited to distributing the risk of economic loss. *Id.* at 871-873. When parties engage in complex commercial endeavors, we think the Kentucky Supreme Court would seek to preserve their ability to distribute risks via contract and to insure against loss. With this in mind, we predict that the Kentucky Supreme Court would hold that the product for economic loss rule purposes includes the entire unit for which a party to a complex commercial transaction has the ability to distribute risk by contract and insure against loss. This rule ensures that the parties to complex commercial agreements–and not the courts–will be free to set the terms of their agreements.

Applying this rule to this case, we hold that the product is the entire nursing home because Mt. Lebanon had the ability to allocate risk contractually and/or insure against loss with respect to the entire nursing home. If Mt. Lebanon was not satisfied with the terms it negotiated with the builder, it should have re-negotiated for an extended warranty for a higher price or insured against its risk of loss. As it stands, Mt. Lebanon received the benefit of its bargain with the builder–and, by implication, with Hoover–and we are unwilling now to restructure the terms of its agreement without giving the builder or Hoover an opportunity to negotiate for a higher price.

Mt. Lebanon would no doubt argue that it had no opportunity to allocate risk to Hoover. We disagree for the reasons stated in our privity discussion below.

## IV.

Mt. Lebanon argues that the economic loss rule only applies if there is privity between the parties to a dispute. Because Mt. Lebanon contracted with the builder and not with Hoover, the argument goes, the economic loss rule does not apply.

home) and not a component part. And *East River* supports Mt. Lebanon as much as it does Hoover because it suggests that a component part of the final product–a ship's turbine–is the product. Thus, we must look elsewhere for guidance.

Mt. Lebanon argues that the treated wood is the product. This theory has serious problems. If the product is to be defined as the item placed in the stream of commerce, then any component part of a product is a product itself because all component parts are placed into the stream of commerce at some point. *Id.* As the Supreme Court stated in *East River*, such a finding would obliterate "the distinction between warranty and strict products liability." *Id.* With the understanding that there must be some limit to the degree to which a unit may be broken down into multiple parts when attempting to define what constitutes a product for purposes of the economic loss rule, we predict that the Supreme Court of Kentucky would hold that the wood used in the trusses in this case is not the product. While the wood used in the nursing home is not irreducible–it consists of wood and fire retardant–it is so rudimentary that, if we were to hold that it is the product for economic loss rule purposes, nearly any component part would be a product and we would, as a result, effectively eviscerate the distinction between contract and tort law.

Mt. Lebanon, however, also advanced the argument that the relevant product in this case is the truss. To get to this argument Mt. Lebanon would need to prove that Hoover is responsible for the truss–not just the chemical and perhaps the wood used in the truss. If Mt. Lebanon did so, it could argue that the truss contains another degree of complexity that may suffice to preserve the border between contract and tort. It presumably consists of fastening devices and an engineered design. We need not decide whether the Kentucky Supreme Court would consider this unit sufficiently complex to be a product because other reasons suggest that, at least in this case, it is not.

Two years later, the Kentucky Supreme Court decided *Real Estate Marketing, Inc. v. Franz*, 885 S.W.2d 921 (Ky. 1994). In *Franz*, subsequent purchasers of a home sued the builder for structural defects under warranty, negligence, and statutory theories. *Id.* The trial court granted the builder's motion to dismiss and the case was appealed to the Kentucky Supreme Court. *Id.* It reversed, reasoning that the Franzes should be able to assert their statutory theory. While the Kentucky Supreme Court agreed with the trial court that the Franzes could not sustain a negligence claim, it did so because there was no "damaging event," not because their claim was barred by the economic loss doctrine. *Id.* at 926. Indeed, in its decision, the Kentucky Supreme Court expressly refused to extend *Franz* to a Kentucky Court of Appeals decision which had adopted the economic loss doctrine. *Id.*

Thus, *Franz* forces us to reconsider our earlier ruling in *Miller's Bottled Glass*. In *Franz,* the Kentucky Supreme Court declined to extend the economic loss rule to an end-consumer's second-hand purchase of a house. We think, then, that *Franz* probably answers in the negative the question of whether the economic loss doctrine applies to consumer purchases in Kentucky. Yet, as we have stated, some courts decline to extend the economic loss rule to consumer purchases, but apply it to business purchases. *Cova v. Harley Davidson Motor Co.*, 182 N.W.2d 800, 804 (Mich. Ct. App. 1970), Frumer & Friedman, § 13.11[3] n. 6-9 and accompanying text. *Franz*, then, does not tell us whether the Kentucky Supreme Court would apply the economic loss doctrine to tort claims like the one before us stemming from a business purchase.

With no decision on point from the Kentucky Supreme Court, there is no reason for us not to follow our earlier decision in *Miller's Bottled Gas* and predict that the Kentucky Supreme Court will apply the economic loss rule to bar a tort claim in a case that involves a business purchase. We recognize that the language used in *Miller's Bottled Gas* makes no distinction between business and consumer

purchases.   Yet *Miller's Bottled Gas*, if confined to its facts–i.e., a business purchase–is wholly consistent with *Franz*.   Any suggestion in *Miller's Bottled Gas* that its holding extends to consumer purchases is dicta that has since been eclipsed by *Franz*.

Further, our prediction that the Kentucky Supreme Court would apply the economic loss doctrine to business purchases is supported by all the available "relevant data." *Cf. Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985) (stating that federal courts should look to "all relevant data" when predicting a state supreme court's decision including state appeals court rulings, restatements of the law, academic publications, and the majority rule).   A majority of jurisdictions in this country have applied the economic loss doctrine to business purchases, Frumer & Friedman, § 13.11[1-3], as has the Kentucky Court of Appeals.   *Falcon Coal Co. v. Clark Equip. Co.*, 802 S.W.2d 947, 948 (Ky. Ct. App. 1991).   In addition, the weight of the academic commentary favors this approach.   Frumer & Friedman at § 13.14.

### III.

Having determined that the Kentucky Supreme Court would apply the economic loss rule to business purchases, we now turn to the question of whether the economic loss rule bars Mt. Lebanon's claims.  The answer to this question turns on how we define the product because, as we have stated, the economic loss rule permits recovery for damages to property other than the product purchased but denies recovery for damages to the product itself.  If the product is the treated wood in the trusses, as Mt. Lebanon urges, then Mt. Lebanon may recover for damage to property other than the wood in the trusses, including, for example, damage to the ceiling or the roof of the nursing home.  If the product is the nursing home as a whole, as Hoover argues, then Mt. Lebanon's tort claims are barred because the product–the nursing home–was the only thing damaged.

Courts are divided over whether the component parts of a building or the building itself is the product for purposes of the economic loss doctrine.  Frumer & Friedman at § 13.13. In most cases, a home-buyer is suing either the builder or the manufacturer of materials used by the builder for defects in a particular product used in the home.  Some courts might carve an exception out of the economic loss doctrine for the purchase of a home; the purchase of one's home is, for most, the most significant purchase made during one's lifetime, and most home-buyers do not have the expertise to ensure that the products used in building the home are defect-free.  But we are not faced with facts which might lead to such an exception.   Mt. Lebanon was a relatively sophisticated commercial purchaser–sophisticated enough, at least, to contract for the construction of a multi-million dollar nursing home facility and operate it with some success for over sixteen years.

We must now try to predict the approach the Kentucky Supreme Court would adopt.   Mt. Lebanon refers us to *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997), and argues that the product is the "item placed in the stream of commerce."  Hoover, on the other hand, relies on *East River* when it argues that the product is the item purchased by the initial user.  While these two cases would likely be persuasive to the Kentucky Supreme Court, neither adopts the rule offered by each party.  Rather, it appears that product scope determinations are fact-sensitive.  In *Saratoga*, for example, the Court held that the product was the ship initially sold to the user but not items added to the ship after the initial purchase.   520 U.S. at 879.  In *East River*, on the other hand, the Court held that the ship's turbine was the product and not the entire ship.  476 U.S. at 867.  Thus, neither case provides conclusive guidance in our quest to determine whether the Kentucky Supreme Court would hold that a component part of a larger product is a product for purposes of the economic loss rule.  Indeed, it seems that *Saratoga* supports Hoover as much as it does Mt. Lebanon because it suggests that the product is the ship (or nursing