DISSENT
RONALD LEE GILMAN, Circuit Judge,
dissenting.
Unlike my panel colleagues, I believe that the Kentucky Supreme Court is more likely than not to extend the' economic-loss rule to consumer transactions. I draw this conclusion based on footnote five in Giddings & Lewis, the policy considerations behind the económic-loss rule, the opinions rendered by the overwhelming majority of other state courts that have ruled on the issue, and the facts of the case before us. *336 At the very least, this case cries out for certification of the issue to the Kentucky Supreme Court. I would therefore reverse the judgment of the district court and grant Norcold’s motion to certify. Accordingly, I respectfully dissent.
I would first observe that the majority opinion presupposes its own conclusion by stating that “the status quo in Kentucky is that the economic loss rule does not extend to consumer transactions.” (Maj. Op. 332-33 n.1) To the contrary, the rule’s application to consumer transactions is very much up in the air, which is precisely why we have been tasked with making an “Erie prediction” in this case. And the best evidence before us concerning what the Kentucky Supreme Court would likely do about the issue before us is found in footnote five of Giddings & Lewis, Inc. v. Industrial Risk Insurers, 348 S.W.3d 729 (Ky. 2011). Without deciding the question, the Kentucky Supreme Court in that footnote dropped a conspicuous hint as to which direction it would lean: “notably,” the Court wrote, “the Restatement (Third) of Torts ... makes no distinction between products produced for commercial consumers and those produced for consumers.” Id. at 737 n.5. A natural reading of the text of the footnote — which, although not binding, is nonetheless rather clear — strongly suggests that the Kentucky Supreme Court is amenable to applying the economic-loss rule to consumer transactions, and would probably do so if given the opportunity.
The majority opinion denigrates the persuasive force of footnote five by stating that “[w]hen the Supreme Court of Kentucky announced the economic loss rule in Giddings & Lewis, it could have used broad language that would encompass consumer transactions.” (Maj. Op. 335) To the contrary, the Kentucky Supreme Court is constrained to decide only those issues that are before it and could not rule on the question of the economic-loss rule’s application in the consumer context in Giddings & Lewis — a commercial-transaction case — because it is “prohibited from producing mere advisory opinions.” See Med. Vision Grp., P.S.C. v. Philpot, 261 S.W.3d 485, 491 (Ky. 2008).
That the Kentucky Supreme Court would go out of its way to say anything about the economic-loss rule in the consumer context in a decision concerning commercial transactions makes footnote five stronger, not weaker, evidence that the Court would extend the rule to the consumer context. This conclusion is further bolstered by the fact that as many as fifteen states have recognized the rule’s applicability to consumer transactions and only two explicitly have not — a trend that we have no reason to suppose the Kentucky Supreme Court would buck. See Frumer & Friedman, Products Liability § 13.07(4) (rev. ed. 2015).
Nor do the three policies identified in Giddings & Lewis as justifying the economic-loss rule support the distinction between commercial and consumer transactions as claimed by the majority. First, distinguishing between commercial and consumer transactions blurs the line between tort and contract, an outcome that flies in the face of the Kentucky Supreme Court’s admonition that the economic-loss rule is designed to “maintain[ ] the historical distinction between tort and contract law.” Giddings & Lewis, 348 S.W.3d at 739 (quoting Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002)). This point was aptly noted by the Wisconsin Supreme Court: “[W]hether a consumer or commercial plaintiff, if tort law were allowed to provide tort relief for purely economic loss, contract law would drown in a sea of tort.” State Farm Mut. Auto. Ins. Co. v. Ford Motor Co. (Wisconsin Ford Motor Case), *337 225 Wis.2d 305, 592 N.W.2d 201, 209-10 (1999). See also Clarys v. Ford Motor Co., 592 N.W.2d 573, 575 (N.D. 1999) (“The separate and distinct functions served by tort and contract law, upon which the economic loss doctrine is based, apply equally to consumer and business purchasers of defective products.”); State Farm Mut. Auto. Ins. Co. v. Ford Motor Co., 572 N.W.2d 321, 324-25 (Minn. 1997) (concluding that the economic-loss rule applies to consumer transactions and collecting cases from other jurisdictions). My panel colleagues concede that this particular policy goal is furthered by the economic-loss rule’s application to both types of transactions (Maj. Op. 332), but they fail to account for the deleterious effect their decision will have on maintaining the tort-contract distinction.
Second, I fail to see how not applying the economic-loss rule to consumer transactions furthers the rule’s goal of protecting “parties’ freedom to allocate economic risk by contract.” See Giddings & Lewis, 348 S.W.3d at 739 (quoting Mt. Lebanon, 276 F.3d at 848). My panel colleagues opine that ordinary consumers, whom they characterize as “less sophisticated” than commercial entities, “frequently face adhesion contracts that render the purchase of products a take-it-or-leave-it proposition. In many cases,” they contend, “consumers are unaware of the risks inherent in a product, let alone the opportunity to allocate that risk by contract.” (Maj. Op. 333)
But the experience of today’s consumer is at variance with this picture. Manufacturers and sellers regularly encourage extended warranties on durable products. Insurance is also available, as the case before us illustrates. And, as the Wisconsin Supreme Court has observed, permitting tort recovery for pure economic loss to a consumer would ensure that the consumer “would essentially receive full warranty protections against economic risk without ever having to negotiate or pay for such warranty.” Wisconsin Ford Motor Case, 592 N.W.2d at 211; see also Clarys, 592 N.W.2d at 576 (“Allowing a consumer exception to the economic loss doctrine would undermine warranty agreements that are part of any product sale.”). Such an outcome deprives the manufacturer or seller of the ability to allocate economic risk by contract — a result precisely the opposite of what the economic-loss rule sets out to achieve.
Third, the Kentucky Supreme Court has explained that the economic-loss rule is meant to “encourage! ] the party best situated to assess the risk of economic loss, usually the purchaser, to assume, allocate, or insure against that risk.” Giddings & Lewis, 348 S.W.3d at 739 (emphasis added) (quoting Mt. Lebanon, 276 F.3d at 848). The facts of this case illustrate the emphasized clause’s importance. The majority opinion asserts that ordinary consumers are too “generalist” (Maj. Op. 333-34) to be best situated to assess the risk of loss and insure' themselves accordingly. I respectfully disagree. Although ordinary consumers are often “generalists” in a broad sense, they are nonetheless specialists in their own needs and are fully capable of protecting their investments to the degree that they desire to do so.
This case is a perfect example. Larry Swerdloff, presumably an unsophisticated “generalist” consumer, bought the KV containing the defective refrigerator and — as my panel colleagues observe — “insured the RV through State Farm.” (Maj. Op. 330) The majority’s concern that consumers are unable to accurately assess the value of a product and the importance of insuring against the risk of the loss of its economic value is thus belied by the facts of the very case before us. See Wisconsin Ford Motor *338 Case, 592 N.W.2d at 212 (“Because the consumer can allocate his or her economic risk by contract, the policy of protecting parties’ freedom to allocate risk through contract applies equally to consumers as to commercial parties.”).
I would offer the final observation that this case is not about an ordinary consumer and his ill-fated transaction. Swerdloff was paid $145,193.20 per his State Farm insurance policy for the loss of the RV. So what we have before us is the ease of a commercial insurance company suing a commercial manufacturer in tort for a pure economic loss. That fact alone places this case squarely within the three policy rationales justifying the application of the economic-loss rule. Giddings & Lewis, 348 S.W.3d at 739 (quoting Mt. Lebanon, 276 F.3d at 848).
The majority’s decision, in fact, has the effect of allowing State Farm to “have its cake and eat it too.” State Farm collected insurance premiums from Swerdloff for the risk it assumed and is now being allowed to “double dip” by getting reimbursed from Norcold after making good on Swerdloffs loss. Such an outcome is at odds with the policies behind the economic-loss rule.
In my opinion, the factors supporting the prediction that the Kentucky Supreme Court would extend the economic-loss rule to consumer transactions outweigh the factors against such a prediction. I would therefore reverse the judgment of the district court and grant Norcold’s motion to certify the two questions that it has proposed to the Kentucky Supreme Court.