NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0212n.06

Case No. 21-5789

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JON SAWYER; PENNEY SAWYER, | ) | **FILED**<br>May 31, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| DDRTC TURKEY CREEK, LLC, et al., | ) |  |
| Defendants, | ) | OPINION |
| MRG PIZZA-TENNESSEE, INC., dba Blaze Pizza; SMOKY MOUNTAIN CREAMERY, INC., Marble Slab Turkey Creek, | ) |  |
| Defendants-Appellees. | ) |  |

Before: GIBBONS, McKEAGUE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. While repairing a shopping center's HVAC unit, Jon Sawyer slipped and fell from a ladder. He suffered severe injuries and underwent multiple surgeries. He and his wife now seek to recover against two of the shopping center's tenants. Because the tenants did not owe him a duty of care, we affirm the district court's grant of summary judgment in their favor.

I.

In 2018, Jon Sawyer was hired to repair a shopping center's HVAC unit. DDRTC Turkey Creek (Turkey Creek) owned the shopping center but leased it to several tenants, including Blaze Pizza, Jazzy Nail, and Marble Slab Creamery. The HVAC unit was on the shopping center's roof.

To access it, Sawyer had to climb a ladder in a service area at the back of the building. Blaze Pizza, Jazzy Nail, and Marble Slab Creamery all had access to this service area.

When Sawyer arrived, he noticed the service area's floor and the ladder's rungs were covered in a "black funk." R. 51-3, Pg. ID 321. Still, Sawyer walked across the floor and climbed up the ladder. At the top, he found that the roof was poorly drained and covered with water. With his shoes now wet, Sawyer started to make his way down the ladder. But he slipped on a rung and fell, severely injuring his left leg and ankle.

Jon Sawyer sued Blaze Pizza, Jazzy Nail, and Marble Slab Creamery for negligence, arguing that they "failed to keep the area clean and caused the greasy build up." R. 1, Pg. ID 5. He also sued the landlord, Turkey Creek. And his wife, Penney Sawyer, sought damages for loss of consortium. The district court granted summary judgment to the tenants, and the Sawyers settled with Turkey Creek. The Sawyers then appealed the grant of summary judgment to two of the tenants: Blaze Pizza and Marble Slab Creamery.

II.

We review the district court's grant of summary judgment de novo. *See Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). Because we are exercising diversity jurisdiction, we apply the substantive law of Tennessee. *See State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017).

The Sawyers bring a premises-liability claim against Blaze Pizza and Marble Slab Creamery. To succeed, the Sawyers must establish that: (1) the tenants owed Jon Sawyer a duty of care; (2) the tenants breached that duty; (3) he suffered an injury or loss; (4) the breach in fact caused the injury or loss; and (5) the breach was a proximate or legal cause of the injury or loss. *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 n.7 (Tenn. 2014).

We start with the first element: Did the tenants owe Jon Sawyer a duty of care? Under Tennessee law, a duty of care in a premises-liability action "follows the right to control the premises." *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 628 (Tenn. Ct. App. 2009); *see also Gladman v. Revco Discount Drug Ctrs., Inc.*, 669 S.W.2d 677, 679 (Tenn. Ct. App. 1984) (rejecting the argument that a lessee exercised control over a parking lot because "by the lease agreement the [parking] lot remained in the control of the lessor"). Thus, a tenant has a "duty to see that the leased premises and its approach is in a reasonably safe condition." *Berry v. Houchens Mkt. of Tenn., Inc.*, 253 S.W.3d 141, 146 (Tenn. Ct. App. 2007) (citation omitted). But landlords are responsible for common areas they control. Indeed, it's "well established" that when a "landlord retains possession of a part of the premises for use in common by different tenants, the landlord is under a continuing duty imposed by law to exercise reasonable care to keep the common areas in good repair and safe condition." *Id.* (citation omitted).

Here, the leases place the right to control the service area firmly in Turkey Creek's hands. Although the tenants have a "non-exclusive right to use" common areas, the leases expressly reserve to Turkey Creek the right to "operate, manage, equip, light, repair, and maintain" them. R. 32-1, Pg. ID 111–12; R. 36-1, Pg. ID 162. And the tenants must pay Turkey Creek their fair share of the costs for "operating, maintaining, repairing and managing" the common areas. R. 32-1, Pg. ID 112; R. 36-1, Pg. ID 162. Turkey Creek had the right to control the service area, and the tenants therefore did not owe a duty of care to Sawyer.[1]

The Sawyers disagree, arguing that the tenants' use of the service area establishes control. They cite a single case to support their position—*Thomas v. Fresh Market, Inc.*, No. 1:15-cv-323,

---

[1] The Sawyers repeatedly assert that the tenants "caused" the accident. Appellant's Br. 24. Although evidence to this effect could help prove the causation element for their negligence claim, causation does not relate to the duty-of-care issue.

2019 WL 691397 (E.D. Tenn. Feb. 19, 2019). But *Thomas* doesn't help them. For one thing, *Thomas* dealt with the duty to "maintain the approach" to tenants' premises. *Thompson v. Ruby Tuesday, Inc.*, No. M2004-01869-COA-R3-CV, 2006 WL 468724, at *4 (Tenn. Ct. App. Feb. 27, 2006). The tenant, Fresh Market, stacked firewood on the sidewalk in front of the store's entrance. *Thomas*, 2019 WL 691397, at *5. That forced the plaintiff, who was driving a mobility scooter, to leave the sidewalk and approach Fresh Market from the parking lot. *Id.* In the process, the mobility scooter tipped over on a speed bump, causing severe injuries. *Id.* The court held that Fresh Market owed a duty to the plaintiff to ensure that "the approach to the [tenant's] business is in a reasonably safe condition." *Id.* at *7. Here, by contrast, the Sawyers don't argue that the tenants failed to maintain the approach to their stores—they instead argue about a rear ladder with no public access. Moreover, unlike the leases here, the lease in *Thomas* gave Fresh Market control over part of the sidewalk; Fresh Market had the "right" to display its products there. *Id.* at *2.

That said, even if a tenant's use of a common area could establish control in some cases, the Sawyers' evidence doesn't show that these tenants controlled the service area. As the district court noted, "leaving trash, mops, and product in a certain area does not rise to the level of exercising control over such area." R. 68, Pg. ID 686. And that's especially true here because Turkey Creek routinely asserted its own control over the service area by, for example, ordering the tenants to remove their items or removing the items for them. So even if use could establish control in some cases, nothing in the record suggests these tenants in fact controlled the service area. Ultimately, Turkey Creek was responsible for the service area, and as a result of the settlement, it is no longer a party to this suit.

\* \* \*

We affirm.