NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0430n.06
No. 22-5138

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| EYE CENTERS OF AMERICA, LLC d/b/a RETINA CENTER OF NEW JERSEY, LLC, | ) ) ) | |
| Plaintiff - Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) | |
| SERIES PROTECTED CELL 1, A SERIES OF OXFORD INSURANCE COMPANY TN, LLC, | ) ) ) | OPINION |
| Defendant - Appellee. | ) | |

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Eye Centers of America, LLC, d/b/a Retina Center of New Jersey, LLC (Retina Center), brought suit seeking insurance coverage for income lost from temporary closure of referral sources during the coronavirus pandemic. The district court upheld the denial of coverage and granted judgment on the pleadings to the insurer, Series Protected Cell 1, a Series of Oxford Insurance Company TN, LLC (Oxford). For the following reasons, we AFFIRM.

**I.**

Retina Center is a group of physicians in New Jersey that specializes in treating diseases of the retina, vitreous, and macula. The group obtained an "Actual Net Loss Insurance Policy," effective December 31, 2019, through December 30, 2020, from Oxford, a Tennessee-based insurance company. The policy lists the "scheduled events" for which Retina Center obtained coverage during the policy term. Each description includes an explanation of what circumstances

or occurrences trigger coverage and any limitations that exist for coverage of a scheduled event.

Retina Center's claim stems from the "Loss of Referrals" scheduled event.  The relevant portion of the Loss of Referrals event definition covers:

> (b) the termination or cancellation of all or any material part of a business relationship between Insured and a Key Referral Source as a result of:
>
> > (i)     the cessation or suspension of the business operations of such Key Referral  Source for a period no less than 60 days;
> …

The policy defines a "Key Referral Source" as a third party who regularly directs business to Retina Center that accounts for 10% or more of Retina Center's annual gross revenue or is a third party specified as part of the policy.  Retina Center's policy names six Key Referral Sources, who are all medical providers.

The policy provides that if a loss occurs because of a Loss of Referrals event, Retina Center is entitled to receive its "Actual Net Loss" from that event.  Actual Net Loss includes "Income Loss" and "Extra Expenses".  Income Loss is defined to include the loss of pre-tax net profit that Retina Center would earn in the absence of the Scheduled Event.  Extra Expenses include the cost to cover and the expenses associated with finding and selecting a replacement Key Referral Source.

In its complaint Retina Center asserts it sustained Income Loss and Extra Expenses because of a Loss of Referrals event.  Retina Center alleges that the Loss of Referrals event occurred after the Governor of New Jersey issued Executive Order 107 on March 21, 2020 to mitigate the spread of the coronavirus.  This Executive Order limited social gatherings and required non-essential businesses to close to the public.  Notably, as Oxford mentions in its answer, Executive Order 107 states:  "Nothing in this Order shall be construed to limit, prohibit, or restrict in any way the provision of health care or medical services to members of the public."  Despite that language,

Retina Center states that this Executive Order required the shutdown of its Key Referral Sources.

On March 23, 2020, New Jersey's Governor issued Executive Order 109, which suspended all non-emergency surgeries and medical procedures beginning at 5:00 p.m. on March 27, 2020. Yet this Executive Order did not mandate the closure of all health care or medical facilities, just the suspension of non-emergency surgeries and procedures. Eventually, the Governor issued Executive Order 145, which allowed for non-emergency medical procedures and surgeries to resume beginning at 5:00 a.m. on May 26, 2020.

The Governor's suspension order resulted in the temporary shutdown of the Key Referral Sources, which led to the Loss of Referrals claim, according to the complaint. Retina Center then sought coverage for an Actual Net Loss from the reduced referrals exceeding the $1,000,000 policy limit. After Oxford's agent corresponded with Retina Center asking for more details supporting the claim, Oxford denied coverage on December 1, 2020. In its denial letter Oxford took the position that a temporary suspension of a Key Referral Source's business did not result in a termination or cancellation of the business relationship between Retina Center and the Key Referral Source. However, that same day, Retina Center spoke with Oxford's general counsel. On this call, Oxford's general counsel purportedly agreed that Retina Center's insurance policy was vague about what events qualify as Loss of Referral events.

Following this exchange, Retina Center sued in federal court, seeking a declaration of its rights under the insurance policy and bringing claims for breach of contract and bad faith under Tennessee law . The district court granted Oxford's motion for judgment on the pleadings on the ground that the insurance policy only covered permanent cancellations. Retina Center filed a timely appeal

**II.**

On appeal, Retina Center raises the issues of whether the district court applied the appropriate standard of review for deciding the motion for judgment on the pleadings and whether the district court correctly applied the law when it interpreted the insurance policy.

We review de novo the grant of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir. 2016). We accept as true all well-pleaded facts of the complaint, as we would for a motion to dismiss for a failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012); *see also Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). Thus, the court should view the complaint and any reasonable inferences in favor of the plaintiff. *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But even in this favorable light, Retina Center's alleged facts still must describe a plausible entitlement to legal relief. *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (dismissing a complaint under Rule 12(c)). And we need not accept legal conclusions in the complaint as being true. *See Bates*, 958 F.3d at 480.

In this diversity case we apply the choice-of-law rules of the forum state, Tennessee. *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017). Under those rules for contract disputes, we generally honor the parties' agreement as to the choice of substantive law. *See Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 556 (Tenn. Ct. App. 2016); *see also Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 (6th Cir. 2006). Here, the insurance policy provides that it is "governed by the laws of the State of Tennessee, without regard to conflict of law provisions." Neither party disputes the validity of this provision, and we agree that Tennessee law applies.

Because interpretation of the policy is a legal question, *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012), we review the district court's reading of the policy de novo. *See Hometown Folks, LLC v. S&B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011). As part of this consideration, the plain language of the contract will determine the contract's meaning, but any truly ambiguous language must be "construed against the insurance company and in favor of the insured." *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170, 179 (Tenn. 2019).

### III.

In its complaint, Retina Center invokes the language of a Loss of Referral event under (b)(i) of the policy to argue that it is entitled to coverage. This provision, as noted, applies when Retina Center's business relationship with a Key Referral Source is terminated or canceled as a result of a cessation or suspension of the Key Referral Source's business for at least 60 days. Retina Center argues that coverage is triggered under (b)(i) simply when there is a pause in business from a Key Referral Source of no less than 60 days. But that argument ignores the additional policy requirement that the cessation or suspension of business must result in a "termination or cancellation" of a relationship with a Key Referral Source, not merely a temporary interruption of dealings.

Retina Center argues that, when defining Loss of Referrals, the word "permanent" is not included in the policy, and thus Oxford could not rely on permanency as a condition for denying the claim. Retina Center's argument, however, does not square with the plain and ordinary meaning of the terms "termination or cancellation." *See generally Clark*, 368 S.W.3d at 441 (words in an insurance policy must be given their plain and ordinary meaning) (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386–87 (Tenn. 2009)). Black's Law Dictionary defines "terminate" as "to end; to conclude" and "cancel" as "to terminate a promise,

-5-

obligation, or right." (11th ed. 2019). The definitions show that "terminate" and "cancel" mean similar things—both include a sense of finality. So, on its face, a temporary change does not qualify for coverage. Further, as the district court noted, the Supreme Court has held that terminate "ordinarily means 'put an end to.'" *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC*, 559 U.S. 175, 182–83 (2010) (citations omitted). This plain language points against the policy covering temporary pauses in a Key Referral Source's business.

Retina Center seeks to import ambiguity into the language based on its conversation with the general counsel of Oxford, when Oxford's general counsel supposedly admitted to the ambiguity of this scheduled event because the policy does not include the word "permanent". Retina Center believes that this omission creates an ambiguity that should be construed in its favor according to Tennessee law. But this argument ignores the reality that "the interpretation of an insurance policy is a question of law and not fact." *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006). Although the facts show that one or both parties believe that a contract term is ambiguous, it will be decided as a matter of law and not by fact. Even if Retina Center's characterization about Oxford's general counsel's statement regarding the ambiguity in the policy is accurate, the sentiment that there may be ambiguity in the policy is incorrect. The absence of the word "permanent" does not create ambiguity. In fact, as the dictionary definitions confirm, the word was not necessary in conjunction with "termination or cancellation"—its inclusion in the policy would have been a redundancy. Termination or cancellation is, by definition, a permanent act, not a temporary measure.

Thus, it was not enough for there to be merely a 60-day suspension of a Key Referral Source's business to entitle Retina Center to recovery as it claims. Coverage under the policy occurs only when the cessation or suspension of the business operation of the Key Referral Source

leads to termination or cancellation of the business relationship with Retina Center. In other words, the temporary must result in something permanent—that is, a termination or cancellation.

**IV.**

With that policy interpretation in mind, we now turn to the complaint to determine if it states a plausible claim. In particular, because all of Retina Center's claims hinge on whether Oxford wrongfully denied it insurance coverage, we analyze whether Retina Center pleaded that a cancellation or termination of a material relationship occurred with one of its Key Referral Sources because of a suspension of the referral source's business. To succeed, Retina Center's complaint must provide facts that create a "reasonable inference that [Oxford] is liable for the misconduct alleged" and that rise above a speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To start, we must determine whether the complaint adequately alleges that at least a 60-day suspension or cessation of a Key Referral Source's business took place. As to this issue there are at least two ways of construing the complaint. One is that the Key Referral Sources shutdown began on March 27, 2020, following Executive Order 109, and ended on May 26, 2020, in which case their operations were suspended for only 59 days. But another reading is that the Key Referral Sources shutdown began on March 21, 2020, with Executive Order 107, even though it specifically exempted health care businesses, and ended on May 26, 2020, in which case their operations were on hold for 66 days. Because we must "construe the complaint in the light most favorable to the plaintiff, [and] accept all of the complaint's factual allegations as true," we will accept the complaint's statement that the Key Referral Sources suspended their business operations for at least 66 days following Executive Order 107. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

Because this precedent event for a Loss of Referral is adequately pleaded, we must determine whether a termination or cancellation of all or any material part of a business relationship with a Key Referral Source took place. Retina Center does not adequately plead this element of its claim. Because each element of a claim must be pleaded with sufficient detail, *Twombly*, 550 U.S. at 555, the motion for judgment on the pleadings was properly granted.

To be sure, Retina Center states it suffered a Loss of Referrals in excess of $1,000,000. But merely asserting such a claim does not make it so. Neither the complaint nor its exhibits explain which, if any, of the Key Referral Sources are permanently closed, how the relationship with any Key Referral Source has been permanently impacted by the suspended business, or how Retina Center determined it suffered a loss in excess of $1,000,000. Without that necessary information, the pleadings do not rise above speculation. *Twombly*, 550 U.S. at 555. The failure to make necessary factual allegations to support the claim means that a reasonable inference cannot be made that a Loss of Referral event occurred as defined in the insurance policy. *Iqbal*, 556 U.S. at 678. Retina Center's claim therefore does not survive a motion for judgment on the pleadings.

Because Retina Center's claims about Oxford's denial of coverage do not survive a motion for judgment on the pleadings, the bad faith claim under Tennessee law also fails. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 378 (6th Cir. 2007) (explaining Tenn. Code Ann. § 56-7-105 only applies when the plaintiff demonstrates that the denial of an insurance claim was erroneous and in bad faith).

## V.

For the foregoing reasons, we AFFIRM the district court's judgment on the pleadings in favor of Oxford.